**Opal Jean DAVIS, Appellant
(Defendant below),**

v.

**James Edwin DAVIS, Appellee
(Plaintiff below).**

**No. 3226.**

Supreme Court of Wyoming.

April 14, 1964.

David D. Uchner of Henderson, Godfrey & Kline, Cheyenne, for appellant.

Walter C. Urbigkit, Jr., Cheyenne, for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Upon plaintiff's amended complaint, a June 13, 1962, decree, from which no appeal was taken, found generally for plaintiff and against defendant and granted plaintiff a divorce. Although in the amended complaint plaintiff sought custody of the minor children of the parties, the decree found no permanent order of custody should be entered with the granting of the divorce, but that the interests of the children would be best served by awarding custody to plaintiff for a period of six months upon condition the minors be cared for and maintained by plaintiff's mother and step-father, with the right reserved, at the end of six months, for either plaintiff or defendant to again appear before the court for such order of custody as might be appropriate. Again no appeal was taken from this portion of the decree by either party. The six-month period having elapsed, on January 16, 1963, plaintiff petitioned for what he termed "Amendment of Order of Custody," in which it was represented that the temporary nature of the previous custody order caused problems for the children and made it difficult for plaintiff to permanently plan for their welfare. This petition also set forth plaintiff's prospects for being with the minors; that plaintiff did not believe defendant was capable of caring for them; and prayed that he be awarded their custody.

Defendant resisted plaintiff's petition, representing that plaintiff could not properly care for, rear, and educate the children, and that in their best interest custody should be awarded to her, and prayed the decree of June 13, 1962, insofar as it dealt with custody of the minors, be set aside

and that the court enter a decree changing and altering the children's custody and grant defendant full and absolute custody.

Under these circumstances, a hearing for permanent custody was had before the court on June 20, 1963, following which the court found generally that the children's custody should be awarded plaintiff, and by its order did so award their custody to plaintiff until further order of the court, giving defendant reasonable right of visitation upon reasonable notice.

Defendant appeals from this order, and, as near as can be determined from the record before us and appellant's brief and oral argument before this court, the basis of that appeal is upon the single ground there was "no justification for depriving the mother of her children."

Appellant starts her argument upon the premise that there is a natural right in the mother to have the first privilege to nurture and care for her own young based upon the common experience that a child's best interests are ordinarily served when assured the love, care and attention of its mother. In neither of the two Wyoming cases cited by appellant in support of that position, namely Curran v. Curran, 51 Wyo. 217, 65 P.2d 243; and Ramsey, v. Ramsey, 76 Wyo. 188, 301 P.2d 377, was any such holding made. Both these cited cases came to this court by appeal from a decree awarding custody of children to the mother where the evidence was conflicting. In discussing authorities relative to awards of custody to mothers, this court made short quotation of excerpts from statements—not holdings—of some courts from other jurisdictions indicating the fitness of mothers to have custody of their young. The only finding and holding, however, by this court in both cases was that the trial court's decision, in the face of conflicting evidence, would not be disturbed. On the other hand, in Laughton v. Laughton, 71 Wyo. 506, 259 P.2d 1093, 1102–1103, 43 A.L.R.2d 351, it was pointed out:

"The affection and concern of fathers for their offspring has repeatedly been demonstrated to be just as great as that of mothers. We do not say, nor do we believe from this record, that either of the parties are lacking in their devotion to their child. Quite to the contrary, their continuation of this misguided struggle for custody, is in all probability the result of their love for the child. But this does not justify our ignoring that the mother is the one who was responsible for breaking up the home and depriving the child of many things to which it was entitled nor can we escape our duty to maintain the integrity of an unappealed and final adjudication of one of our district courts."

In the paragraph following that quoted above, after pointing out that the judgment and decree there sought to be modified had adjudicated all matters at issue between the parties, including the matter of child custody, and that no appeal therefrom was taken, the court said the decree was beyond attack. In the present case, there was no such final decree respecting custody of the children. This left the door open for future decision regarding that custody. When adverse counsel asked the father if it was not a fact that he was gone quite a bit at night when he lived with the children before, the court sustained objection to the question, indicating that anything which occurred before the last hearing was immaterial. The sustaining of the objection was erroneous because the question propounded may have elicited testimony which could be considered as bearing upon the fitness of the father to be given the disputed custody. However, no objection to the ruling was made by the mother's counsel, and no offer of proof was made. In the absence of such offer of proof, we cannot know what the answer might have been and, therefore, cannot know whether

the matter sought to be elicited was material. As has been repeatedly said, and, as restated in the Laughton case, supra, 259 P.2d 1103, the paramount consideration in determining custody of a minor is the welfare of the child, and, if it were shown that without justifiable reason the father had left his children unattended at night, such conduct might have inclined the decision respecting custody.

The record brought here does not contain a transcript of the divorce trial. The only transcript of evidence is that of the June 20, 1963, hearing respecting custody, held about a year after the divorce was granted. In consequence no information is given us as to the particulars of the wife's conduct which persuaded the trial court to find generally for plaintiff respecting the causes for divorce alleged in plaintiff's amended complaint. All that is shown to us is the bare fact that the trial court decided the wife's conduct warranted the divorce. If there was evidence given at that time bearing on the fitness or unfitness of either party to have custody, we are left in the dark as to what it was. In fairness to the mother, it might be that she was not a good wife but still could be a good mother. However, in this case there may be justifiable inference, unfavorable to the mother, to be drawn from the court's order of June 13, 1962, giving temporary custody of the children to the plaintiff upon condition that their physical care be given unto the plaintiff's mother and her husband. That order obviously indicated that as of the date of the temporary order the court felt the best interests of the children would not be served by giving them into the custody of the mother.

If we must rest our decision strictly upon the evidence as shown by the record transcript of the hearing which resulted in the custody order from which this appeal is taken, the appellant must fail, because the burden rests upon her to bring to this court all the evidence which was before the court and upon which the correctness of its final order must be judged.

Notwithstanding what is said respecting the appellant's failure to discharge the burden resting upon her, we are disposed to point out that the evidence presented by plaintiff at the custody hearing was clear, uncontradicted, convincing, and substantial that he was a fit person to have the control and upbringing of the children, and that, being remarried, a suitable home would be maintained for the children. There was not a whisper of criticism of the plaintiff, his morals, his character, or that he did not love his children as a father should. While it is also true the mother and her witnesses said she too loved her children, that she kept a clean, nice home for herself, and that she had been engaged in various employments, yet it also appeared that, without any satisfactory reason therefor being shown, there were long lapses between her communications with the children, and that some questions affecting her credibility were raised upon cross-examination. The district judge was in the best position to resolve the conflicts thus presented. That he found this to be of some considerable difficulty seems to be indicated by the reservation made that the award endure until the further order of the court.

Finding no error in the award, the same is affirmed.

Affirmed.